## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CUSTOMS FRAUD** | : | **Case No.** _____ |
| **INVESTIGATIONS, LLC** | : | |
| | : | **Underlying Litigation:** |
| **Petitioner,** | : | *U.S. ex rel. Customs Fraud Investigations,* |
| | : | *LLC, v. Victaulic Company* |
| **v.** | : | Case Number: 5:13-cv-02983-MAK |
| | : | Eastern District of Pennsylvania |
| **UNITED STATES CUSTOMS** | : | |
| **AND BORDER PROTECTION** | : | |
| | : | |
| **Respondent.** | : | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
## TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

**TABLE OF CONTENTS**

I.     BACKGROUND ................................................................................................... 1

II.    STANDARD OF REVIEW ................................................................................... 4

III.   ARGUMENT ........................................................................................................ 5

    A.  CFI's limited request for testimony seeks information that is relevant to the disputes at issue........................................................................................................ 5

    B.  Producing an employee to appear and testify at a deposition as requested in CFI's subpoena would have a minimal impact, if any, upon CBP's resources. ................. 8

    C.  The testimony requested is not protected under any recognized privilege. ...................... 11

    D.  CBP waived any additional objections to CFI's subpoena by not raising them in its August 23, 2018 letter. ........................................................................................... 12

IV.   CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Abbot v. Kidder, Peabody & Co.*,
  1997 WL 337228 (E.D. Ill. 1997) .......................................................................... 13

*Aetna Casualty and Surety Co. v. Rodco Autobody*,
  130 F.R.D. 2 (D. Mass. 1990) ............................................................................... 13

*Alexander v. F.B.I.*,
  186 F.R.D. 21 (D.D.C. 1998) ............................................................................ 5, 13

*BNSF Ry. Co. v. Alere, Inc.*,
  No. 18-CV-291-BEN-WVG, 2018 WL 2267144 (S.D. Cal. May 17, 2018) .......................... 13

*BuzzFeed, Inc. v. U.S. Dep't of Justice*,
  318 F. Supp. 3d 347 (D.D.C. 2018) ...................................................................... 4, 9

*Committee for Nuclear Responsibility, Inc. v. Seaborg*,
  463 F.2d 788 (D.C. Cir. 1971) ............................................................................. 14

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) .................................................................................. 9

*S.E.C. v. Selden*,
  484 F. Supp. 2d 105 (D.D.C. 2007) ....................................................................... 14

*Tuite v. Henry*,
  98 F.3d 1411 (D.C. Cir. 1996) .............................................................................. 12

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Company*,
  839 F.3d 242 (3d Cir. 2016) .................................................................................. 2

*Watts v. S.E.C.*,
  482 F.3d 501 (D.C. Cir. 2007) ...................................................................... passim

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006) .............................................................................. 12

## Statutes

19 U.S.C. § 1304, *et seq.* ............................................................................. passim

## Rules

Fed. R. Civ. P.  45 ....................................................................................... passim

Fed. R. Civ. P. 26 ........................................................................................ 6, 9

## Regulations

19 C.F.R. § 103.21 ...................................................................................... passim

6 CFR § 5.49 ............................................................................................ 12, 14

Plaintiff Customs Fraud Investigations, LLC ("CFI"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, seeks an order to compel U.S. Customs and Border Protection ("CBP" or "the Agency") to comply with Plaintiff's Subpoena to Testify at a Deposition in a Civil Action, dated July 2, 2018. (Ex. A. Subpoena to Testify at a Deposition in a Civil Action.) As set forth in Schedule A of the Subpoena, CFI requested that CBP produce an employee to appear and testify as to Victaulic Company's ("Victaulic")[1] methods for marking country-of-origin on certain of its imported products, and specifically whether they comply with the applicable regulations for such markings as interpreted by the Agency.

CBP's refusal to cooperate with this discovery, as set forth in its August 23, 2018 letter, will severely prejudice CFI, especially due to the approaching deadline for discovery in the underlying case set for December 21, 2018. (Ex. C. Letter to Anna C. Haac, dated August 23, 2018.) Indeed, CBP's determination as to whether Victaulic's marking methods comply with the Agency's rules is a critical issue in the underlying case; therefore, CBP's testimony is highly relevant, as it is the Agency charged with overseeing and making such determinations. Moreover, contrary to the position adopted by the Agency, the limited topics set forth in the Subpoena would not unduly burden the Agency's resources nor do they intrude on any privilege. Therefore, CFI respectfully requests that the Court issue an Order compelling CBP to comply with the Subpoena and produce an employee to attend and testify at a deposition.

## I.      **BACKGROUND**

In this *qui tam* action brought under the False Claims Act, which has been in litigation for several years, *see United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Company*,

---

[1] Victaulic Company is the Defendant in the underlying action, captioned *U.S. ex rel. Customs Fraud Investigations, LLC, v. Victaulic Company*, Case No. 13-cv-2983 (E.D. Pa.).

839 F.3d 242 (3d Cir. 2016), Plaintiff/Relator CFI asserts that Defendant Victaulic has knowingly imported iron and steel pipe fittings it manufactured abroad without proper country-of-origin markings, as required by U.S. law, at 19 U.S.C. § 1304, *et seq.*, thus triggering an obligation by Victaulic to pay marking duties.  (Ex. 1 of the Subpoena, First Amended Complaint ¶¶ 109-114.) CFI further claims that Victaulic's knowing and improper avoidance of an importer's obligation to pay marking duties constitutes a violation of the False Claims Act.  19 U.S.C. § 3729(a)(1)(G). (Ex. 1 of the Subpoena, First Amended Complaint ¶¶ 109-114.)

As relevant to CFI's Subpoena, for example, Victaulic has produced discovery showing that certain of its cast ductile iron pipe fittings manufactured in China and imported into the United States were marked with their country of origin by applying the word "CHINA" to the interior of the fittings using a Videojet Model 1510 Ink Jet Coding Machine.  (*See* Ex. B, Stipulation of Undisputed Facts for Purposes of Discovery (Dkt. 92); Ex. 2 of the Subpoena, Defendant Victaulic Company's Responses to Plaintiff/Relator's First Set of Interrogatories, Response No. 4; Ex. 3 of the Subpoena, Defendant Victaulic Company's Responses to Plaintiff/Relator's Second Set of Interrogatories, Response Nos. 10 and 11; Exs. 4-5 of the Subpoena.)  Victaulic has taken the position that these country-of-origin markings generally meet the regulatory requirements, invoking an exception to 19 U.S.C. § 1304(c)(2), and has claimed, in any event that it "is widely understood within the pipe fitting industry [that] Customs' focus is on the existence of a reasonably permanent marking, not the specific method by which that marking is made."  (Ex. 3 of the Subpoena at Response Nos. 10 and 11; *see also* Ex. D - Anna C. Haac's Declaration in Support of Subpoena to Attend and Testify at a Deposition at ¶¶ 9-13.)

As CBP is the U.S. Agency charged with monitoring and enforcing the nation's trade laws and customs regulations regarding the importation of foreign goods and in light of Victaulic's

reliance on the Agency's focus in its defense, CFI served its Subpoena to Testify at a Deposition in a Civil Action on CBP on July 2, 2018, requesting that CBP produce an employee to appear and testify as to ten (10) narrow topics listed in Schedule A of the subpoena.[2]  (Ex. A.)  Through the subpoena, CFI sought testimony from CBP with respect to its position and underlying reasoning regarding whether Victaulic's claimed method of marking certain of its iron and steel pipe fittings complies with 19 U.S.C. § 1304(a) and (c), as interpreted by CBP.  Given that CBP is responsible for interpreting and enforcing 19 U.S.C. § 1304, testimony regarding the application of its own regulations on whether imported items are properly marked would fall squarely within the Agency's purview.  Indeed, CBP routinely inspects imports and advises importers on similar marking questions.  Thus, CBP's testimony is uniquely relevant to the key issues in dispute in the underlying litigation.

The day before the requested deposition was to occur, however, CBP declined to comply with the Subpoena, citing in large part the Agency's own *Touhy* regulations as the different bases for its refusal to produce an employee to appear and testify as requested.  (Ex. C. Letter to Anna C. Haac, dated August 23, 2018.)  CBP provided little, if any, factual bases for the objections, however.  Thus, CFI responded to CBP's objections via a letter to CBP dated October 3, 2018, demonstrating that CBP failed to establish that the limited information sought would be protected under any recognized privilege or that responding would pose an undue burden on the Agency, as required under Federal Rule of Civil Procedure 45 to avoid compliance with a subpoena, and

---

[2] As CBP recognized in its letter dated August 23, 2018, CFI's subpoena was served pursuant to the Agency's own *Touhy* regulations, at 19 C.F.R. § 103.21 *et seq*.  CFI served the subpoena on CBP on July 2, 2018, more than ten (10) business days prior to the scheduled deposition date on August 24, 2018.  19 C.F.R. § 103.22(d).  CFI also included a copy of the First Amended Complaint, as well as an affidavit specifying the nature of the information sought and its relevance to the proceeding in the above captioned matter.  19 C.F.R. § 103.22(c).  CFI's subpoena was thus served in compliance with CBP's *Touhy* procedural regulations.

requesting that CBP comply with the Subpoena.  (Ex. E. Letter to Marc J. Weinberger, dated October 3, 2018.)  In that letter, CFI's counsel also requested a meet-and-confer with CBP.  The parties thereafter met and conferred, but have been unable to reach agreement, leaving CFI with no other recourse but to file this Motion to Compel, particularly in light of the approaching deadline for discovery in the underlying case, which is December 21, 2018.[3]  (Ex. F. Amended Scheduling Order.)

## II.    STANDARD OF REVIEW

When deciding a motion to compel under Rule 45, a court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1).[4]  *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018); *citing In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  The court must then assess any objections to the subpoena under the Rule 45 standard, which "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." *BuzzFeed, Inc.*, 318 F. Supp. 3d at 356, *citing Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007); *see* Fed. R. Civ. P. 45(d)(3)(A).  This analysis applies to testimonial subpoenas, including "subpoenas issued to third-party [federal] agencies or agency employees in federal civil suits." *Id*. The party resisting discovery bears the burden to show "that the information requested is either unduly burdensome or privileged." *Id; see also* Fed. R. Civ. P. 45(d)(3)(A).

Finally, absent unusual circumstances or good cause, failure to serve written objections to a subpoena within the compliance period constitutes a waiver of such objections.  Fed. R. Civ. P.

---

[3] In the parties' meet and confers, CBP also generally noted that the Agency further objected to CFI's requested topics as necessitating expert testimony, calling for legal theories and/or conclusions, and/or not being described with reasonable particularity.

[4] A challenge to a government agency's refusal to comply with a Rule 45 subpoena proceeds as a Rule 45 motion to compel.  *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007).

45(d)(2)(B); *Alexander v. F.B.I.*, 186 F.R.D. 21 (D.D.C. 1998).

## III.    ARGUMENT

There can be no question that CFI is seeking information that is relevant to an important issue in the underlying litigation: whether Victaulic's country-of-origin marking methods are compliant with the Agency's regulations. The ten (10) topics listed in Schedule A of the Subpoena are all targeted to gather information on this issue.

As provided by Rule 45, once relevance is established, CBP may only decline to produce an employee for a deposition where the information sought would be protected under a recognized privilege or where responding would pose an undue burden. In its response to CFI's Subpoena, however, CBP bases its refusal to produce an employee to testify on its own *Touhy* regulations, but these regulations do not create a separate privilege. *See Watts*, 482 F.3d at 508–09 ("[T]he legal basis for any opposition to a subpoena must derive from an independent source of law such as government privilege or the rules of evidence or procedure.").

Thus, CBP's bases for declining to comply with the Subpoena are unsubstantiated, and, accordingly, CBP cannot meet its burden to show that the testimony sought is either privileged or unduly burdensome. Indeed, none of the information CFI is seeking would implicate information protected under any of the recognized privileges and providing an employee to testify as to the mere ten (10) listed topics in Schedule A of the Subpoena will have a minimal impact, if any, on the Agency's resources. Therefore, this Court should compel CBP to comply with the July 2, 2018 Subpoena and produce an employee to appear and testify at a deposition.

### A.    CFI's limited request for testimony seeks information that is relevant to the disputes at issue.

The ten (10) brief deposition topics listed in Schedule A of the Subpoena seek information regarding an issue that is of obvious relevance to this litigation: whether Victaulic's methods of

marking country of origin on certain of its pipe fittings comply with the requirements of 19 U.S.C. § 1304, as interpreted by CBP.  Rule 26 of the Federal Rules of Civil Procedure, which generally governs civil discovery, provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *Watts*, 482 F.3d at 507.  The testimony CFI seeks in this litigation is germane to CFI's claims, as is further set forth in Anna C. Haac's Declaration in Support of Subpoena to Attend and Testify at a Deposition, which was provided to CBP as part of the Subpoena.  (Ex. D. Declaration.)  CBP's arguments that such testimony would be irrelevant to the case are unsupported.

As set forth in 19 U.S.C. § 1304(a), Victaulic's imported iron and steel pipe fittings are required to be "marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article."  19 U.S.C. § 1304(c), further specifically requires that the country of origin of such pipe fittings be marked in one of five specific ways:  die stamping, cast-in-mold lettering, etching, engraving, or continuous paint stenciling.  Only if all of these methods are "technically or commercially infeasible," may the fittings be marked by "an equally permanent method of marking."

Through the course of discovery in the underlying case, Victaulic has admitted that certain of its cast ductile iron pipe fittings manufactured in China and imported into the United States were marked with their country of origin by applying the word "CHINA" to the interior of the fittings using a Videojet Model 1510 Ink Jet Coding Machine.  (*See* Ex. B, Stipulation of Undisputed Facts for Purposes of Discovery (Dkt. 92); Ex. 2 of the Subpoena, Defendant Victaulic Company's Responses to Plaintiff/Relator's First Set of Interrogatories, Response No. 4; Ex. 3 of the Subpoena, Defendant Victaulic Company's Responses to Plaintiff/Relator's Second Set of

Interrogatories, Response Nos. 10 and 11; Exs. 4-5 of the Subpoena.)  Discovery also suggests that

Victaulic has used an ink stamping process to mark Chinese country of origin on certain iron and

steel pipe fittings.  However, neither Victaulic's ink printing nor its ink stamping constitutes one

of the required methods for marking imported iron and steel pipe fittings delineated in 19 U.S.C.

§ 1304(c).

     Victaulic nevertheless invokes an exception to 19 U.S.C. § 1304(c)(2) in claiming that its

these markings comply with the statute.  19 U.S.C. § 1304(c)(2) provides:

> If, because of the nature of an article, it is technically or commercially infeasible to
> mark it by one of the five methods specified in paragraph (1), the article may be
> marked by an equally permanent method of marking or, in the case of small
> diameter pipe, tube, and fittings, by tagging the containers or bundles.

     Victaulic further claims its markings are compliant because "[a]s reflected in the

implementation and enforcement of the marking requirement, and as is widely understood within

the pipe fitting industry, Customs' focus is on the existence of a reasonably permanent marking,

not the specific method by which that marking is made." (Ex. 3 of the Subpoena at Response Nos.

10 and 11.)  CFI disagrees and believes Victaulic's position is inconsistent with the plain language

of the marking duty statute and its implementing regulations, as well as CBP's letter rulings and

other guidance further interpreting these provisions.  (*See, e.g.*, Ex. D - Anna C. Haac's Declaration

in Support of Subpoena to Attend and Testify at a Deposition at ¶¶ 9-13.)  Thus, there is a dispute

between the parties.  CFI's Subpoena seeks testimony from CBP on that dispute, i.e., whether

Victaulic's ink jet printing and ink stamping, under these circumstances, complies with 19 U.S.C.

§ 1304 from CBP's perspective.

     In its response to Requests No. 5 and No. 8, in which CFI asks for testimony regarding

whether Victaulic's ink printing and stamping of country-of-origin on its imports falls within any

of the methods for marking listed under 19 U.S.C. § 1304, CBP states it is unclear how the

information is genuinely necessary to the proceeding because it is uncertain whether the method

of marking is used by Victaulic in relation to the case.[5]  But as laid out in Ms. Haac's Declaration,

however, Victaulic itself stated under oath, in its answers to CFI's First Set of Requests for

Interrogatories, that it marks certain of its imported pipe fittings using the ink printing and

stamping methods and further claimed that these marking methods constitutes a sufficient method

of country-of-origin marking.  (Ex. D.)  Moreover, as discussed above, as the Agency charged

with making such determinations, CBP's testimony on these topics is plainly relevant to central

issues in dispute in this litigation.

## B. <u>Producing an employee to appear and testify at a deposition as requested in CFI's subpoena would have a minimal impact, if any, upon CBP's resources.</u>

The testimony that CFI seeks is not only essential to the issues in this case, but is also

reasonable in scope and cannot be obtained from any other source.  In assessing the Federal Rule

of Civil Procedure Rule 45 "undue burden" standard, courts must consider whether the discovery

sought:

> (1) is unreasonably cumulative or duplicative;
> (2) can be obtained from some other source that is more convenient, less
> burdensome, or less expensive; and,
> (3) is proportional to the needs of the case, taking into account the importance of
> the issues at stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.

*BuzzFeed, Inc.*, 318 F. Supp. 3d at 358; *see* Fed. R. Civ. P. 26(b)(1), (2)(C).  The Rule 45 undue

burden standard also requires that courts be "generally sensitive to the costs imposed on third

parties."  *Id*.  In cases involving third-party subpoenas to government agencies or employees, the

discovery sought "must properly accommodate the government's serious and legitimate concern

---

[5] CBP cites 19 C.F.R. § 103.23(a)(3)(ii) and 19 C.F.R. § 103.23(a)(3)(iv).

that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Id. citing Watts*, 482 F.3d at 509 (*quoting Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

The topics for which testimony is requested are reasonable in scope, in that they involve only ten (10) targeted subjects as set forth in Schedule A of the Subpoena, all relating to the main issue of whether certain methods of marking country-of-origin comply with the Agency's regulations.  Indeed, the information sought would be most efficiently acquired from an Agency employee, as CBP is the Agency charged with inspecting imports to determine whether they are properly marked.  Finally, the cost of producing an employee to testify as to the issues that are clearly within the Agency's duties would be nominal, such that the importance of the information sought certainly outweighs any potential burden on the Agency.

CBP, however, argues that producing an employee to testify as to CFI's proposed topics would pose an undue burden.  For instance, CBP claims that it need not provide testimony in response to Request No. 1, where CFI seeks testimony regarding CBP's position and underlying reasoning as to whether a country-of-origin marking located in the interior of a pipe fitting complies with the country-of-origin marking requirements as set forth in 19 U.S.C. § 1304(a), arguing that responsive information is publicly available.[6]  However, the publicly available information does not specifically discuss whether such placement for a country-of-origin marking with respect to a Victaulic pipe fitting would be considered compliant with the marking requirements, nor would there appear to be any basis for CBP's position that testifying would unduly burden the Agency.[7]

---

[6] CBP cites 19 C.F.R. § 103.23(a)(3)(iii).
[7] In its response to Request No. 1, CBP also states that it will not testify as to the accompanying photographs of the pipe fittings because they are of unknown provenance, citing 19 C.F.R. §

In response to Request No. 2, wherein CFI seeks testimony regarding the Agency's interpretation as to the meaning of the term "ultimate purchaser in the United States" as used in 19 U.S.C. § 1304(a) and as applied to Victaulic's imported pipe fittings, CBP claims that the request is not reasonable in scope because it could cover a large number of importations over an unspecified period of time.  Similarly, CBP claims that responding to Requests No. 6 and 7, asking whether it is "technically or commercially infeasible" for Victaulic to mark its imported pipe fittings with the methods enumerated in 19 U.S.C. § 1304(c)(1), rather than its purported ink printing, and whether ink printing constitutes an "equally permanent method of marking," would unduly burden the Agency because it would consume "countless hours by an unknown number of Agency employees to retrieve information pertaining to all of Victaulic's importations."[8]  CBP repeats these arguments in its response to both Request No. 9, asking for testimony regarding CBP's position as to whether it is "technically or commercially" infeasible for Victaulic to mark its imported pipe fittings, that it purports to mark by ink stamping, with the methods enumerated in 19 U.S.C. § 1304(c)(1), and Request No. 10, asking whether such ink stamping constitutes an "equally permanent method of marking" as the phrase is used in 19 U.S.C. § 1304(c)(2).  CFI, however, is not requesting that an Agency representative testify as to every single imported Victaulic product in response to any of these Requests.  As confirmed in its response letter to CBP, CFI is merely asking that the Agency testify as to its position and underlying reasoning generally as to the proposed topics.  CBP's claims that the requests are unreasonable in scope are thus unsupported.

---

103.23(b)(7).  But, the authenticity of the photographs is neither disputed nor at issue with respect to the specific line of questioning.  Further, authentication of the photographs is not relevant, as the subject of the intended questioning is the placement of the markings, not the entity which may have placed them on the fitting.
[8] CBP cites 19 C.F.R. § 103.23(b)(8).

For its response to Request No. 4, where CFI requests testimony as to whether CBP believes that Victaulic's ink printing or stamping on the pipe fittings constitutes an appropriate method of marking as required under 19 U.S.C. § 1304(a), where the parts could be marked by cast-in-mold lettering, as Victaulic explained in its response to Interrogatory No. 1, CBP stated that the request lacks particularity because Victaulic's response is "lengthy," and thus the Agency is "unable to discern the nature of the specific information sought," and at any rate the information is publicly available.  (Ex. C. Letter dated August 23, 2018.)  But, Victaulic's response is a mere four (4) double-spaced pages in length, and it is apparent from the language in Request No. 4 that CFI is simply requesting testimony regarding whether Victaulic's marking of pipe fittings with ink printing or stamping, where the parts could be marked by cast-in-mold lettering, constitutes an appropriate method of marking under the cited law.  Moreover, the available materials – at least those that counsel for Plaintiff has been able to identify – do not provide information specific as to CBP's position and underlying reasoning in response to CFI's specific inquiry.

Therefore, it is evident that the testimony sought is reasonable in scope, and that producing an employee to testify as to ten (10) narrow topics set forth in the Subpoena will not unduly burden the Agency.

### C.   The testimony requested is not protected under any recognized privilege.

CBP claims that some of the requested testimony may be prohibited from disclosure as confidential commercial information, citing to its *Touhy* regulations at 19 C.F.R. § 103.23(b)(6) and (1).[9]  But, again, although courts recognize an agency's *Touhy* regulations as enforceable, it is well established that *Touhy* regulations do not and cannot create a separate privilege.  *See Watts*

---

[9] CBP claims that confidential commercial information may be implicated in its response to Requests Nos. 2, 6, 7, 9, and 10.

*v. SEC*, 482 F.3d 501, 508–09 (D.C.Cir.2007) ("[T]he legal basis for any opposition to a subpoena must derive from an independent source of law such as government privilege or the rules of evidence or procedure.").  CBP does not otherwise state any facts to support its contention that any of the requested information would be privileged.  At any rate, if confidential information regarding Victaulic's imports and sales is implicated, Victaulic and CFI have entered into a Stipulated Protective Order allowing for any such information to be utilized in the course of discovery.

      D.      **CBP waived any additional objections to CFI's subpoena by not raising them in its August 23, 2018 letter.**

During recent discussions between counsel for both parties regarding compliance with the subpoena, CBP raised two additional objections, generally asserting that CFI's requests for testimony call for legal conclusions and necessitate expert testimony, as purportedly prohibited under 6 CFR § 5.49.[10]  However, CBP's failure to assert these objections within the timeframe provided by the Federal Rules effectively forfeits CBP's ability to raise them. Fed. R. Civ. P. 45(d)(2)(B); *see also Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (discussing requirement to serve objections to subpoena within specified timeframe).  Only where there are unusual circumstances or good cause will courts consider untimely objections to a subpoena.  *Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006).

Again, CFI's subpoena was served on July 2, 2018, and CBP did not set forth its reasons for denying compliance until a day before the scheduled date for the deposition, at which the Agency did not appear.[11]  Moreover, it was not until October 18, 2018—almost two months after

---

[10] Counsel for CFI and CBP held telephone conferences to discuss the issues related to the subpoena on October 18th and 19th, 2018.

[11] Notably, courts in other jurisdictions have held that the only relief available to a non-party after having been served with a subpoena to testify is to file a motion to quash or modify the subpoena,

the period of compliance with the subpoena—that CBP raised its additional objections.  Because

CBP cannot show any unusual circumstance or good cause that would support this Court's

consideration of CBP's untimely objections invoking expert testimony and legal conclusions, CBP

should be found to have waived these objections.

Indeed, this case is distinguished from others, like *Alexander v. F.B.I.*, in which the District

Court for the District of Columbia have entertained objections made beyond the timeframe of a

subpoena.  186 F.R.D. at 29.  In that case, a plaintiff sought to compel a former FBI employee to

produce certain documents.  In denying the motion in part, the District Court held that the

document requests at issue were unspecific and overly broad, and that that the former FBI

employee, as a non-party, had already acted in good faith by appearing at a deposition, responding

to the more specific document requests within reasonable time, and added that counsel for the

parties were in contact concerning his compliance prior to the time he filed his objections.  *Id*. at

42.  The Court thus concluded that the untimely objections based on attorney-client and work

product privileges had not been waived.  *Id*.

By contrast, here, CFI's requests for testimony are succinct and involve only ten (10)

narrow topics.  Nevertheless, CBP has refused to provide any testimony in response to CFI's

requests.  Instead, the Agency has generally objected to all of CFI's specific requests for testimony,

most recently alleging that they somehow all call for legal conclusions, and all necessitate expert

---

and failure to do so during the proscribed timeframe results in a waiver of any objections to the
subpoena.  *BNSF Ry. Co. v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *7
(S.D. Cal. May 17, 2018).  *See also Aetna Casualty and Surety Co. v. Rodco Autobody*, 130 F.R.D.
2 (D. Mass. 1990) (Nonparties subpoenaed to testify and produce documents pursuant to Rule 45
served written objections on the subpoenaing party and subsequently failed to attend their
depositions. The court found that "the fact that objections were served is no excuse whatsoever
not to attend the deposition."); *Abbot v. Kidder, Peabody & Co.*, 1997 WL 337228, *3 (E.D. Ill.
1997) (same).

testimony.   Furthermore, counsel for CBP did not contact counsel for CFI regarding these objections until after the subpoena had expired.

Moreover, CBP fails to set forth any facts in support of its new objections.  CFI is merely seeking testimony on the Agency's general position and underlying reasoning regarding certain methods of marking "country-of-origin" on certain imported pipe fittings.  As such, a CBP employee would only need to testify as to information that is routinely provided to importers when marking questions arise.  CBP provided no facts or arguments in support of its assertion that CFI is seeking testimony that calls for legal conclusions, and only referenced the Department of Homeland Security's *Touhy* regulations at 6 CFR § 5.49, to support its argument that CBP may not proffer an employee to provide expert testimony.  Nevertheless, and as further discussed above, the bounds of the subpoena are ultimately defined by the federal rules of discovery, not by *Touhy* regulations.  *See S.E.C. v. Selden*, 484 F. Supp. 2d 105, 108–09 (D.D.C. 2007); *citing Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) (noting that *Touhy* regulations do "not authorize withholding information from the public or limiting the availability of records to the public ... the ultimate determination ... remains with the courts").

In short, it is evident that CBP's objections were untimely and as such have been forfeited, and at any rate, CBP does not set forth any facts in support of its assertions. Therefore, this Court should not entertain CBP's latest objections and should compel the Agency to produce an employee to testify pursuant to the Subpoena.

IV.   **CONCLUSION**

CBP's refusal to comply with CFI's request for testimony, as set forth in its August 23, 2018 letter and during recent communications, is without legal basis.  Producing an employee to testify as to the ten (10) narrow topics listed in the Subpoena will not pose an undue burden upon

the Agency's resources, or require the disclosure of privileged or confidential information (except as may be covered by an existing Protective Order allowing for such discovery).  Accordingly, this Court should grant CFI's Motion to Compel Compliance with the Subpoena to Testify at a Deposition in a Civil Action, and order that CBP produce an employee to appear and testify as to the requested topics that are relevant for the resolution of CFI's claims in *U.S. ex rel. Customs Fraud Investigations, LLC, v. Victaulic Company*, Case No. 13-cv-2983 (E.D. Pa.).


Dated: October 24, 2018                                     Respectfully submitted,

                                                            **/s/ Jonathan K. Tycko**
                                                            Jonathan K. Tycko
                                                            Anna C. Haac
                                                            Tycko & Zavareei LLP
                                                            1828 L Street, N.W., Suite 1000
                                                            Washington, D.C. 20036
                                                            (202) 973-0900
                                                            (202) 973-0950 (fax)
                                                            jtycko@tzlegal.com
                                                            ahaac@tzlegal.com

                                                            Suzanne Ilene Schiller
                                                            Claudia V. Colón García-Moliner
                                                            Manko, Gold, Katcher, Fox LLP
                                                            401 City Ave., Suite 901
                                                            Bala Cynwyd, PA 19004
                                                            (484) 430-2359
                                                            (484) 430-5711 (fax)
                                                            sschiller@mankogold.com
                                                            ccolon@mankogold.com


                                                            *Counsel for Plaintiff Customs Fraud Investigations, LLC*